IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-124

 No. 284PA20

 Filed 29 October 2021

 STATE OF NORTH CAROLINA

 v.
 JEREMY WADE DEW

 On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision

 of the Court of Appeals, 270 N.C. App. 458, 462 (2020), finding no error after appeal

 from judgments entered on 7 February 2018 by Judge John E. Nobles Jr. in Superior

 Court, Carteret County. Heard in the Supreme Court on 24 March 2021.

 Joshua H. Stein, Attorney General, by Wes Saunders, Assistant Attorney
 General, for the State-appellee.

 Glenn Gerding, Appellate Defender, by Daniel Shatz, Assistant Appellate
 Defender, for the defendant-appellant.

 HUDSON, Justice.

¶1 Here we must determine whether there is sufficient evidence, in the light most

 favorable to the State, that defendant committed multiple assaults against his

 girlfriend when the testimony tended to show that he beat her in her family’s trailer

 and also in her car as they traveled home. Because we conclude that there was

 sufficient evidence of multiple assaults to submit the issue to the jury, we hold that

 the trial court did not err by denying defendant’s motion to dismiss all but one assault
 STATE V. DEW

 2021-NCSC-124

 Opinion of the Court

 charge.

 I. Factual and Procedural Background

¶2 In 2016, Mindy Ray Davis and defendant Jeremy Wade Dew were in a

 relationship and living together in Sims, North Carolina. On 29 July 2016, Davis and

 defendant drove to Atlantic Beach with defendant’s four-year-old daughter to spend

 the weekend with Davis’s parents who owned a trailer there. Both Davis and

 defendant testified at trial, but gave different accounts of the events that occurred

 between 29 July and 31 July 2016.

¶3 The following is a summary of Davis’s account: On 30 July 2016, defendant,

 Davis, and defendant’s daughter spent the evening outside socializing with

 neighbors. Davis testified that around 9:00 p.m., she took defendant’s daughter back

 inside the trailer to put her to bed. The trailer had three bedrooms. The bedroom at

 the front of the trailer where defendant and Davis stayed was separated from the

 other two bedrooms by the communal living spaces. Davis stayed with defendant’s

 daughter until she fell asleep on the couch in the living room around 9:30 p.m. or 9:45

 p.m.

¶4 When Davis went back outside, she and defendant went a few trailers over to

 hang out with her cousin from Virginia. According to her testimony, Davis danced

 with her cousin and defendant’s “whole demeanor changed.” Defendant left the trailer

 and got in the car, drove down the street of the trailer park, drove back, and
 STATE V. DEW

 2021-NCSC-124

 Opinion of the Court

 ultimately went inside the trailer he was staying in with Davis and locked Davis out.

 After Davis called defendant’s phone several times and knocked on the window of the

 trailer, defendant let her into the trailer.

¶5 Once inside, Davis walked to the bedroom at the front of the trailer to change

 into clothing to sleep in. Davis testified that defendant “just hauled off and hit [her]

 upside the head.” She testified that defendant hit her “over and over,”—a continuous,

 nonstop beating—for at least two hours. Specifically, defendant hit her “upside the

 head and ear, on each side,” “kicked [her] in the chest,” bit her nose and her ear,

 “punched [her] in the nose,” “head-butted [her] twice,” and “strangled [her] until

 vomiting.” She recounted that during the attack defendant called her a “slut” and told

 her that she embarrassed him and that she was making him do this.

¶6 Davis testified that she did not fight him back because she was too scared and

 had never been through anything like that before. Defendant also threatened to

 throw her in the Buckhorn Reservoir if Davis said anything to defendant’s ex-wife

 and told Davis he could be the next “Tick Bailey,” a reference to a man who killed his

 ex-wife. Davis testified that defendant told her if she made any noise, he would kill

 everyone in the trailer.

¶7 When the beating was over, defendant said “[w]e’re leaving and we’re going

 home.” He made Davis take the sheets off the bed, which were stained with her blood,

 and clean the mattress cover. Davis wiped down the mattress cover and took the
 STATE V. DEW

 2021-NCSC-124

 Opinion of the Court

 sheets off the bed and put them on the dresser. Davis grabbed their bags and took

 them out to the car. At that point, defendant went to get his daughter off the couch

 and made Davis get into the driver’s seat of the car. He then changed his mind and

 made Davis get into the passenger’s seat. Defendant put his daughter in the backseat

 of the car.

¶8 Davis testified that during the entire car ride back to Sims defendant hit her

 on the side of her head where she ultimately ended up with a ruptured eardrum.

 Defendant pulled off the road several times, reached over and was “jacking [her] up

 to the ceiling of the car, strangling [her].” Davis estimated that three times defendant

 made her take off her seat belt and open the door, and told her that he was going to

 push her out. Defendant also threw Davis’s phone out of the window of the car.

¶9 They arrived in Sims approximately two hours after they left Atlantic Beach.

 When they arrived, defendant told Davis that if she called the police or went to stay

 with her sister, he would cut himself with a knife and say that she did it so that she

 would have to go to jail. Davis testified that she believed defendant because she

 thought he was “crazy enough to do something like that.” The next morning, Davis’s

 sister came to the house and called 911.

¶ 10 The parties stipulated that Davis suffered a concussion, a ruptured eardrum,

 and a nondisplaced nose fracture. She underwent two surgeries to save her hearing

 due to the ruptured eardrum.
 STATE V. DEW

 2021-NCSC-124

 Opinion of the Court

¶ 11 Defendant also testified at trial. According to defendant, sometime after dinner

 on 30 July 2016, he and Davis went to a party a few trailers down from Davis’s

 parents’ trailer. They were at the party for about an hour and a half, and defendant

 went back to the trailer to check on his daughter every once in a while.

¶ 12 One time after checking on his daughter, defendant returned to find Davis

 “with another man.” Defendant testified that he felt “disgusted,” “angry,” “[h]urt,”

 and “[e]mbarrassed.” He went back to the trailer and debated calling his parents to

 pick him and his daughter up, but decided not to. Defendant did not remember

 locking the trailer door, but he received a text from Davis that said she was locked

 out, so defendant unlocked the door for her, and she came inside. According to

 defendant, Davis tried to frantically explain the situation while defendant began

 packing up his things to leave.

¶ 13 Defendant testified that when he bent over to get his cell phone charger, Davis

 came up behind him, bit him on his left shoulder, wrapped her nails around him, and

 hit him. In response, defendant bucked his head back “pretty hard” into her head “[t]o

 get her off” of him three or four times. Defendant and Davis fell face first on the floor,

 and there was a tussle to get up. Defendant testified that the whole episode lasted

 about two minutes. Afterwards, he said they both calmed down and went out onto the

 porch to smoke a cigarette together. Defendant denied biting Davis on the nose or the

 ear but acknowledged that his head hit her in the nose. He denied beating Davis for
 STATE V. DEW

 2021-NCSC-124

 Opinion of the Court

 two hours in the trailer and for two hours on the ride home. He also testified that he

 did not know what happened to her phone.

¶ 14 Defendant testified that it was Davis’s idea to go home that night. Defendant

 got his daughter and put her in the car seat in the back seat of the car while Davis

 was in the driver’s seat warming up the car. According to defendant, Davis drove the

 whole way home and they just listened to the radio. When they arrived at the house

 in Sims, defendant put his daughter in bed and defendant and Davis went to sleep in

 the same bed. Defendant testified that the next morning Davis’s sister came over and

 was “screaming and hollering.” Defendant put his daughter in his car and drove to

 his parents’ house.

¶ 15 On 1 August 2016, defendant was arrested. The defendant went to trial on the

 following five bills of information in which he was charged with the following seven

 offenses:

 16CRS53232 First-degree kidnapping
 16CRS53233 1 – Assault by strangulation
 2 – Assault with a deadly weapon inflicting
 serious injury through fists and hands resulting
 in a ruptured eardrum

 16CRS53234 Assault on a female through a kick to the head
 16CRS53235 Assault on a female through a headbutt to the
 forehead
 16CRS53236 1 – Assault with a deadly weapon inflicting
 serious injury through fists, hands, and teeth
 resulting in a fractured nose
 2 – Communicating threats
 STATE V. DEW

 2021-NCSC-124

 Opinion of the Court

 The trial began 5 February 2018, and the jury convicted defendant on all charges

 except two: the assault by strangulation, and assault on a female by kick to the chest.

 The trial court entered a consolidated judgment in sentencing defendant to a

 minimum of 75 months and a maximum of 102 months in prison. Defendant appealed

 to the Court of Appeals.

¶ 16 The Court of Appeals found no error. Defendant filed a petition for

 discretionary review, which we allowed on 12 August 2020.

 II. Issues Presented for Review

¶ 17 On discretionary review, defendant raises two issues: (1) whether there was

 insufficient evidence of multiple assaults such that the trial court erred by denying

 defendant’s motion to dismiss all but one assault charge; and (2) whether there was

 sufficient evidence to establish that defendant used his hands, feet, or teeth as deadly

 weapons. As to the second issue, the members of the Court are equally divided.

 Accordingly, the decision of the Court of Appeals as to this issue stands as law of this

 case without precedential value and we spend the remainder of this opinion

 discussing only the first issue presented. See, e.g., Piro v. McKeever, 369 N.C. 291,

 291 (2016) (per curiam) (affirming a Court of Appeals opinion without precedential

 value by an equally divided vote); CommScope Credit Union v. Butler & Burke, LLP,

 369 N.C. 48, 56 (2016) (same).
 STATE V. DEW

 2021-NCSC-124

 Opinion of the Court

 III. Preservation

¶ 18 Defendant moved to dismiss the deadly weapon element of his assault charges

 at the close of the State’s evidence arguing that insufficient evidence was presented

 to show that his hands could be considered deadly weapons. He renewed his motion

 at the close of all of the evidence, mentioning that the bills of information did not

 include the correct dates of the offense. The Court of Appeals held that defendant’s

 failure to argue before the trial court that the evidence established only one assault

 resulted in a failure to preserve this argument for appellate review. State v. Dew, 270

 N.C. App. 458, 462 (2020). We disagree.

¶ 19 We recently held in State v. Golder, 374 N.C. 238 (2020), that “merely moving

 to dismiss at the proper time under Rule 10(a)(3) preserves all issues related to the

 sufficiency of the evidence for appellate review.” Id. at 249. Additionally, in his

 petition for discretionary review, defendant requested review of the following issue:

 “[w]hether the Court of Appeals erred by affirming multiple counts of assault where

 the defendant struck multiple blows, causing multiple injuries, in a single episode.”

 Defendant’s motion to dismiss for insufficient evidence preserved all sufficiency

 issues, and we allowed defendant’s petition for discretionary review. Accordingly, the

 issue of whether the trial court erred by failing to dismiss all but one count of assault

 is properly before us for consideration.
 STATE V. DEW

 2021-NCSC-124

 Opinion of the Court

 IV. Standard of Review

¶ 20 It is well established that

 [w]hen ruling on a motion to dismiss, the trial court must
 determine whether the prosecution has presented
 substantial evidence of each essential element of the crime.
 Substantial evidence is that amount of relevant evidence
 that a reasonable mind might accept as adequate to
 support a conclusion. In making its decision, the trial court
 must view the evidence in the light most favorable to the
 State.

 State v. Bell, 359 N.C. 1, 25 (2004) (cleaned up) (first quoting State v. Call, 349 N.C.

 382, 417 (1998); then quoting State v. Williams, 355 N.C. 501, 579 (2002), cert. denied,

 537 U.S. 1125 (2003); and then quoting State v. Hyatt, 355 N.C. 642, 666 (2002), cert.

 denied, 537 U.S. 1133 (2003)).

 V. Analysis

¶ 21 Here, defendant was charged with seven offenses, including five assault

 charges, and the jury found him guilty of three assault charges, to wit: AWDWISI

 (No. 53233) with hands/fists resulting in a ruptured eardrum, assault on a female

 (No. 53233) headbutt to forehead, and AWDWISI (No. 53236) with hands/fists

 resulting in a fractured nose. The three assault charges for which defendant was

 found guilty were assault with a deadly weapon inflicting serious injury resulting in

 the ruptured eardrum, assault on a female in connection with the headbutt to the

 forehead, and assault with a deadly weapon inflicting serious injury resulting in the

 fractured nose. Accordingly, we must now examine whether, in the light most
 STATE V. DEW

 2021-NCSC-124

 Opinion of the Court

 favorable to the State, there was substantial evidence of each essential element of

 each of these instances of assault on a female or assault inflicting serious injury.1

¶ 22 One of the essential elements of both assault on a female and assault with a

 deadly weapon inflicting serious injury is "an assault." See N.C.G.S. § 14-33(c)(2)

 (2019); N.C.G.S. § 14-32(b) (2019).2 Here we are asked to determine what exactly

 constitutes an assault and how a court may determine whether there is substantial

 evidence of multiple assaults or only a single assault.

¶ 23 “Although our statutes criminalize the act of assault, ‘[t]here is no statutory

 definition of assault in North Carolina, and the crime of assault is governed by

 common law rules.’ ” State v. Floyd, 369 N.C. 329, 335 (2016) (alteration in original)

 1 As noted above, the members of this Court are equally divided as to whether there

 was substantial evidence that defendant’s hands, feet, and teeth were used as deadly
 weapons. Accordingly, we affirm without precedential value the holding of the Court of
 Appeals that the trial court did not err by denying defendant’s motion to dismiss the deadly
 weapon element of these two counts of assault because the State had presented sufficient
 evidence that defendant’s hands, feet, and teeth were used as deadly weapons. Our analysis
 of the assault with a deadly weapon inflicting serious injury charges would also be applicable
 to an analysis of the lesser included offense of assault inflicting serious injury. Therefore,
 this opinion should not be construed to say conclusively one way or the other whether hands,
 feet, and teeth are deadly weapons.
 2 We note that the bills of information indicate that defendant was charged under

 N.C.G.S. § 14-32(a), which provides that “[a]ny person who assaults another person with a
 deadly weapon with intent to kill and inflicts serious injury shall be punished as a Class C
 felon.” However, the bills of information classify the offense as a Class E felony and do not
 include the language of intent to kill. Therefore, it may be that defendant was actually
 charged under N.C.G.S. § 14-32(b), which provides that “[a]ny person who assaults another
 person with a deadly weapon and inflicts serious injury shall be punished as a Class E felon.”
 Because our focus is on the first element of the offense, “assault” it makes no difference
 to our analysis whether defendant was charged under N.C.G.S. § 14-32(a) or N.C.G.S. § 14-
 32(b). Furthermore, neither party raised this potential discrepancy as an issue at any stage
 of the litigation.
 STATE V. DEW

 2021-NCSC-124

 Opinion of the Court

(citation omitted) (quoting State v. Roberts, 270 N.C. 655, 658 (1967)). “This Court

generally defines the common law offense of assault as ‘an overt act or an attempt, or

the unequivocal appearance of an attempt, with force and violence, to do some

immediate physical injury to the person of another, which show of force or menace of

violence must be sufficient to put a person of reasonable firmness in fear of immediate

bodily harm.’ ” Roberts, 270 N.C. at 658 (quoting 1 Strong’s North Carolina

Index, Assault and Battery § 4 (1957)). Black’s Law Dictionary defines “assault” as

“[t]he threat or use of force on another that causes that person to have a reasonable

apprehension of imminent harmful or offensive contact” and “[p]opularly, any

attack.” Assault, Black’s Law Dictionary (11th ed. 2019). From these definitions, we

gather that assault is a broad concept that can include more than one contact with

another person. For example, an “attack” or “show of force” may refer to a single

punch but could also refer to a deluge of punches in a single fight and still be called

a single assault. We have not found, and the parties have not presented, any evidence

or indication that the General Assembly intended for the State to be able to charge

someone with a separate assault for every punch thrown in a fight. Indeed, the State

made clear in its argument that it did not think it would be appropriate to charge

someone for every punch in a fight. Thus, we must look beyond the number of physical

contacts with the victim to determine whether more than one assault has occurred

such that the State can appropriately charge a defendant with multiple assaults.
 STATE V. DEW

 2021-NCSC-124

 Opinion of the Court

¶ 24 The question of how to delineate between assaults—to know where one assault

 ends and another begins—in order to determine whether the State may charge a

 defendant with multiple assaults, is an issue of first impression in our Court. The

 Court of Appeals has analyzed this issue several times. See, e.g., State v. Brooks, 138

 N.C. App. 185, 190–91 (2000) (holding that the defendant could only be charged with

 a single count of assault with a deadly weapon inflicting serious injury where there

 was no evidence of a distinct interruption between three gunshots); State v.

 Littlejohn, 158 N.C. App. 628, 636 (2003) (holding that the defendant could be charged

 with two counts of assault where the evidence tended to establish that the assaults

 were distinct in time and inflicted wounds in different parts of the victim’s body);

 State v. McCoy, 174 N.C. App. 105 (2005) (holding that the defendant could be

 charged with two counts of assault where the evidence showed the assaults took place

 on two different days, but could not be charged with multiple counts of assault arising

 from a single continuous transaction on one of those days). In brief, the Court of

 Appeals has required that “[i]n order for a criminal defendant to be charged and

 convicted of two separate counts of assault stemming from one transaction, the

 evidence must establish ‘a distinct interruption in the original assault followed by a

 second assault[,]’ so that the subsequent assault may be deemed separate and distinct

 from the first.” Littlejohn, 158 N.C. App. at 635 (second alteration in original)

 (quoting Brooks, 138 N.C. App. at 189). But it is not always easy to determine when
 STATE V. DEW

 2021-NCSC-124

 Opinion of the Court

 a “distinct interruption” has occurred.

¶ 25 In some cases, the Court of Appeals has chosen to apply our decision in State

 v. Rambert, 341 N.C. 173 (1995). In Rambert, the defendant was charged and

 convicted of three counts of discharging a firearm into occupied property. Id. at 174.

 The defendant argued on appeal that evidence that he fired three shots into occupied

 property within a short period of time supported only a single conviction and

 sentence, not three, for discharging a firearm into occupied property. Id. We

 concluded that “the evidence clearly show[ed] that [the] defendant was not charged

 three times with the same offense for the same act but was charged for three separate

 and distinct acts.” Id. at 176. We noted that (1) the defendant employed his thought

 processes each time he fired the weapon, (2) each act was distinct in time, and (3)

 each bullet hit the vehicle in a different place. Id. at 177. Accordingly, we determined

 that each time the defendant discharged his firearm could be charged as a separate

 offense. Id.

¶ 26 Here, the Court of Appeals applied the three factors from Rambert to

 determine whether there was a distinct interruption between assaults. Dew, 270 N.C.

 App. at 462–63. The State argues that we should likewise apply the Rambert factors

 and conclude that multiple assaults occurred on the night in question. Although we

 appreciate that Rambert may be the most closely analogous case from our Court to

 date, we decline to extend Rambert to assault cases generally. Rambert resolved an
 STATE V. DEW

 2021-NCSC-124

 Opinion of the Court

 issue involving the discharge of a firearm, an act which differs from the physical

 assaults here in important ways. Discharging a firearm means firing a shot; each

 distinctly fired shot is a separate discharge of a firearm. The same is not true of

 assault which, as explained above, might refer to a single harmful contact or several

 harmful contacts within a single incident. Multiple contacts can still be considered a

 single assault, even though each punch or kick would require a different thought

 process, would not occur simultaneously, and would land in different places on the

 victim’s body. These two distinct crimes require two distinct analyses. Accordingly,

 we conclude that the Rambert factors are not the ideal analogy for an assault

 analysis.

¶ 27 We agree with the Court of Appeals that the State may charge a defendant

 with multiple counts of assault only when there is substantial evidence that a distinct

 interruption occurred between assaults. Building on the Court of Appeals’

 jurisprudence, we now take the opportunity to provide examples but not an exclusive

 list to further explain what can qualify as a distinct interruption: a distinct

 interruption may take the form of an intervening event, a lapse of time in which a

 reasonable person could calm down, an interruption in the momentum of the attack,

 a change in location, or some other clear break delineating the end of one assault and

 the beginning of another.

¶ 28 Based on the facts here, we think it is important to further explain what does
 STATE V. DEW

 2021-NCSC-124

 Opinion of the Court

 not constitute a distinct interruption. The State’s charges here seem to be based on

 the victim’s injuries. But the fact that a victim has multiple, distinct injuries alone is

 not sufficient evidence of a distinct interruption such that a defendant can be charged

 with multiple counts of assault. The magnitude of the harm done to the victim can be

 taken into account during sentencing but does not automatically permit the State to

 stack charges against a defendant without evidence of a distinct interruption.

¶ 29 Evidence that a defendant used different methods of attack can show a distinct

 interruption depending on the totality of the circumstances. Here the State has

 argued that defendant punched and headbutted the victim and that because there

 was no evidence that these different methods of attack occurred at the exact same

 time, each method constituted a separate assault. We disagree. As we explained

 above, the concept of an assault can be broader than each individual harmful contact,

 but allowing for a separate charge for each non-simultaneous contact would erase any

 limiting principle and allow the State to charge a defendant for every punch in a fight.

 Requiring the State’s case to include evidence of a “distinct interruption” in an

 otherwise continuous assault addresses this concern.

¶ 30 The State has tried to justify its analysis by noting that neither defendant in

 this case nor any of the defendants in cases cited by the parties in their briefs were

 charged for every blow during their assaults. However, this argument would put the

 limiting principle fully within the discretion of the State. Regardless of the fact that
 STATE V. DEW

 2021-NCSC-124

 Opinion of the Court

 the State did not charge a defendant for each blow, the State’s argument would leave

 open the door such that the State could charge for each blow. We decline to leave such

 ambiguity in the law such that the State could, but may choose not to, charge a

 defendant for every punch thrown in a fight when the legislature has shown no

 intention to criminalize the conduct at that level of granularity. To do so would be to

 abdicate our responsibility to interpret the laws passed by the legislature in

 accordance with their plain meaning and intention. Furthermore, it would abolish

 any limiting principle and would leave a trial court powerless to determine whether

 there was sufficient evidence of multiple assaults since evidence of each punch could

 constitute a separate assault under the State’s proposed legal schema.

¶ 31 We now turn to the facts of this case to determine whether there was

 substantial evidence of more than one assault. In the light most favorable to the

 State, we conclude that there could be sufficient evidence of a distinct interruption

 between assault(s) in the trailer and the assault(s) in the car to submit the issue to

 the jury.

¶ 32 Davis testified to being beaten for approximately four hours total. She testified

 that in the trailer defendant hit her “over and over” during a continuous, non-stop

 beating for at least two hours until she vomited. She also testified that she was beaten

 during the two-hour car ride home to Sims when defendant hit her on the side of her

 head and pulled off the road several times to strangle her. But Davis also indicated
 STATE V. DEW

 2021-NCSC-124

 Opinion of the Court

 that there was a distinct interruption between the attack in the trailer and the attack

 in the car.

¶ 33 After the beating in the trailer, but before defendant began beating Davis in

 the car, Davis testified that she wiped down the mattress cover and took the sheets

 off of the bed, that she took their luggage out to the car, and that defendant got his

 daughter off of the couch and put her in a car seat in the back seat of the car. This is

 substantial evidence of a distinct interruption between occurrences in the trailer and

 those in the car. The process of cleaning up and packing up was an intervening event

 interrupting the momentum of the attack. In addition, the beating in the trailer was

 distinct in time and location from the beating in the car. The jury could have found

 that there was a distinct interruption between when the first assault concluded with

 Davis vomiting on the bed and when defendant resumed his attacks in the car during

 the drive home.

¶ 34 Defendant draws inferences from Davis’s testimony that the entirety of the

 assault took place in the trailer. But in the light most favorable to the State, the

 following testimony is substantial evidence that defendant also assaulted Davis in

 the car:

 We continued on, and as we were on the way home,
 the whole time he is still hitting me upside this side of my
 head where I had the ruptured eardrum. He—I remember
 him pulling off the road, jacking me up to the ceiling of the
 car, strangling me. There were several times—his arms are
 long, so he could reach over in my car—he would make me
 STATE V. DEW

 2021-NCSC-124

 Opinion of the Court

 take my seat belt off, open the door and tell me he was
 going to push me out.

 He pulled off the road several times and continued
 to do that. I think it was about three times with the seat
 belt and he’s going to push me out of the car.

 Accordingly, we conclude that the jury could find that the beating in the trailer and

 the beating in the car were distinct assaults.

¶ 35 The State charged defendant with at least two assaults for his conduct in the

 trailer: assault on a female involving the headbutt to the forehead and assault with

 a deadly weapon inflicting serious injury resulting in the fractured nose. As noted

 above, different injuries or different methods of attack standing alone are insufficient

 evidence of a distinct interruption. The State presented no evidence indicating that a

 distinct interruption occurred in the trailer. Even in the light most favorable to the

 State, all of the evidence indicated that it was an ongoing, continuous attack.

 Accordingly, there is substantial evidence of only one assault in the trailer. On

 remand, the trial court should vacate the judgment for the assault on a female (No.

 16CR55325, involving the headbutt to the forehead), and enter a new sentence for

 the remaining consolidated offenses.

 VI. Conclusion

¶ 36 The trial court did not err by denying defendant’s motion to dismiss all but one

 of the assault charges because, in the light most favorable to the State, there was

 sufficient evidence of two assaults—one in the trailer and one in the car—to go to the
 STATE V. DEW

 2021-NCSC-124

 Opinion of the Court

jury. The evidence was not sufficient to show two assaults in the trailer as there was

no showing of a distinct interruption in what was described as a non-stop, several

hour attack in the trailer. Accordingly, we modify and affirm the decision of the Court

of Appeals.

 MODIFIED AND AFFIRMED; REMANDED FOR RESENTENCING

 Justice BERGER did not participate in the consideration or decision of this

case.